SUCCESSORS OF ABARCA, *S. en C.,* Plaintiff, *v.* CENTRAL VANNINA,
INC., Defendant; EDUARDO E. SALDAÑA ET AL., Claimants
and Appellees, *v.* MANUEL COMAS, Substitute Receiver,
Appellant.

No. 4836.   Argued February 7, 1930.—Decided July 15, 1930.

*Jaime Sifre Jr.* and *Horacio Franceschi* for appellant. *Dubón &
Ochoteco, R. Cintrón Lastra,* and *R. Arroyo* for claimants-ap-
pellees.

MR. JUSTICE TEXIDOR delivered the opinion of the Court.

In a civil action pending before the District Court of
San Juan, the defendant corporation Central Vannina filed

a motion, in which it was alleged, among other things, that the books of the corporation contained an item of $23,170 as a bonus to its officers and employees authorized pursuant to resolutions adopted by the board of directors and at the annual meeting of stockholders, which provided that if sugar should sell at the high prices theretofore prevailing the said sum would be applied to the stated purpose subject always to the discretion of the board of directors; that sugar sold at a low price thereby causing a loss to the corporation, and that the board of directors resolved to eliminate from the books the said item. Whereupon it was prayed that the receiver be ordered to make the necessary adjustments in the corporate books.

That motion was opposed by Eduardo E. Saldaña, Arturo B. Echevarría, Juan Ramos, Mateo Bartolomey, Fido Franceschi, José Rocafort, Nicolás Torres and Juan Vilá, to whom had been allotted certain portions of the said item, and who alleged that such a bonus was credited to them in connection with the grinding season which ended in July, 1920, pursuant to a resolution of the board of directors approved at a stockholders' meeting held on August 14, 1920, which resolution had continued in force and was binding on the corporation; that the said bonus had been offered before the end of the grinding season of 1920 and in consideration thereof the opposers of the motion had worked during a certain period of the grinding season and considered the bonus as a part of their salaries and as a contract; that said bonus was a preferred credit; that on February 29, 1924, the board of directors of Central Vannina resolved to close the bonus account and to eliminate the said item from the books, which resolution was null and void, in that the board of directors had no power to set aside any resolution voted at a regular meeting of the stockholders. They denied that the resolution granting the bonus had been adopted subject to the condition that the sugar would sell at the high price mentioned; that if such elimination is allowed to stand,

petitioner Echevarría, who was at that time the cashier of the corporation, would have to reimburse certain advances made by him for account of the said bonus.

The court, by an order dated May 27, 1924, refused to authorize the elimination of the item, reserving a decision on the merits in regard to the claims filed.

On March 16, 1925, the said Saldaña, Echevarría, Ramos, Bartolomey, Franceschi, Rocafort, Torres and Vilá, moved the court for a hearing and consideration of the claims filed.

The record contains a stipulation, filed in court by the parties through their attorneys, in which they agree to the essential facts of the case as follows:

"I.—The receiver admits that the said petitioners have duly filed, through him, their claims against the defendant in case No. 3297 pending before this court in regard to judicial administration and other matters.

"II.—That such claims refer to the payment of the bonus corresponding to the 1919–1920 grinding season authorized at a regular meeting of the stockholders of Central Vannina, Inc., held on August 14, 1920, by a resolution, the disposing part of which reads as follows:

" 'There was submitted the schedule of officers, personnel and employees for the following year showing the salaries assigned to each, as of the 1st of July last, and bonus for the previous year, as follows:

| | |
|---|---|
| " 'Eduardo E. Saldaña | $3,000.00 |
| " 'Arturo Echevarría | 600.00 |
| " 'Nicolás Torres | 260.00 |
| " 'José Rocafort | 220.00 |
| " 'Juan Vilá | 101.00 |

which was approved in every particular.'

"III.—That on September 15, 1921, there was likewise approved at a regular meeting of the stockholders of Central Vannina the following resolution:

" 'The minutes of the previous meeting were read by the Secretary and approved, but in connection with the resolution set forth in the 4th item of the said minutes as to salaries and bonus, it was stated that the sum of $23,170 as the total amount of the said bonus

was canceled and its payment postponed to such time as, in the judgment of the Board of Directors, the corporation should be in a satisfactory financial condition and able with the means at its disposal to perform such an act of liberality without prejudice to its current obligations, which it is now unable to perform owing to the low earnings obtained from the sale of last year's sugar output and to the losses suffered in this year's business.'

"IV.—That the claimants were notified of the aforesaid resolution before the close of the 1919–1920 grinding season, some of them by the president of the corporation, Mr. Damián Monserrat, and others by the general manager of Central Vannina, Mr. Vicente Antonetti, and that the plaintiffs accepted such notice and acted during the remainder of the season under the belief that the promised bonus would be paid.

"V.—That the bonus in question was approved because in the judgment of the directors and stockholders of Central Vannina, Inc., the services rendered by the said employees had been very satisfactory and the profits made justified the granting of such bonus.

"VI.—That in the report submitted on August 14, 1920, to the annual meeting of stockholders of Central Vannina, Inc., by the directors of the said corporation, in Table No. 3 entitled 'Statement of the liquidation of the 1919–1920 grinding season', there is shown the sum of $804,478.39 as earnings, and in Table No. 4, included also in the said report, there appears the sum of $776,079.38 as the net earnings for the said period. That the said liquidation set out the market value of the unsold sugar in the possession of Central Vannina as of the date of the submission of said report; and that, as a matter of fact, and owing to the sudden fall of sugar prices the 1919–1920 output yielded only a small profit, which resulted in the present receivership.

"VII.—That for the purpose of fixing and granting a bonus to its employees, Central Vannina, Inc., ordinarily takes into consideration, in addition to the good services rendered by the said employees, the price at which the sugar produced is sold and the general profits obtained.

"VIII.—That in accordance with the by-laws of Central Vannina, Inc., the board of directors of that corporation has no power to grant any bonus to its employees without the consent of the stockholders given at a regular meeting thereof."

To our mind the above stipulation is of the utmost importance in the case. It establishes the facts which are

admitted by the parties as proved, and with it as a basis the court must proceed to apply the law.

On December 4, 1925, Eduardo E. Saldaña and the other claimants above mentioned moved for a new hearing to pass upon their claims, which motion was opposed by the receiver. On July 9, 1927, the District Court of San Juan made an order holding that the plaintiffs had no cause of action to recover the bonus, which was a gift (*donación*), and it had not been shown that the donees had been duly notified nor that they had accepted the gift in writing, and ordering that the item for such bonus amounting to $23,170 be stricken out from the account books of Central Vannina. Eduardo E. Saldaña and the other parties in interest appealed from that order on July 20, 1927.

On July 28, 1927, the said Eduardo E. Saldaña, Echevarría, Ramos, Bartolomey and others already mentioned filed a motion for reconsideration in the District Court of San Juan praying that said item of $23,170 be not stricken out from the books. On September 9, 1927, a hearing of that motion was had, at which the parties appeared and Central Vannina urged that, inasmuch as there was an appeal pending, the motion should not be considered.

In deciding the motion for reconsideration on September 27, 1927, the court declared that the sums which make up the aforesaid item must remain on the books, to be paid in the same way as other current debts of the corporation.

The receiver of Central Vannina appealed from the above ruling on October 5, 1927. This is the appeal we now have before us.

The appellant has assigned three errors, which we will consider in their order. The first is formulated thus:

"The court erred in denying the motion of Central Vannina, Inc., for cancellation of the gifts amounting to $23,170, since such gifts were not accepted by the claimants who, therefore, are not entitled to recover, even though the resolution of the board of directors of February 29, 1924, were held to be void."

We do not think that any question as to the valid acceptance of the gift can be properly raised here.

Above all, the record contains a stipulation from which it appears, among other things, that the existence of the bonus was notified to the interested parties, who accepted it and acted during the grinding season upon the belief that it would be paid.

Section 625 of the Civil Code defines a gift as follows:

"A gift is an act of liberality by which a person disposes gratuitously of a thing in favor of another, who accepts it."

The essential characteristics of a gift are the liberality of the donor and the gratuitousness of the act. If such liberality is founded upon a consideration and the gratuitousness is therefore lacking, there is no gift in the proper sense of the term.

It is true that there are remuneratory donations in which the consideration consists of services rendered to the donor (Sec. 627 *a*, Civil Code). But it should be noted that the services so *rendered* are invariably those not constituting recoverable debts. If what was involved here were services already rendered, such services were compensable in their nature and the compensation therefor could have been increased without creating a donation; and if it was a case of future services, to be rendered during the grinding season, the bonus was simply an increase of the regular compensation for the services and not an act of liberality or a gratuity.

But, in any event, it is clearly stated in the stipulation already mentioned, that the bonus was declared, that the interested parties were notified thereof, and that they accepted such notification; and this last statement can have no other logical and legal meaning than that of an acceptance of the donation. That such an acceptance was considered as effective and sufficient by Central Vannina, is shown from the action taken by the stockholders at their annual meeting

on September 15, 1921, when they voted the resolution copied into paragraph III of the stipulation above quoted.

On that date, more than a year after the granting of the bonus, a modification was made as to the time of its payment; and by this act the bonus was confirmed and its existence rendered indisputable.

Application lies here of the following quotation from Manresa's Commentaries on the Spanish Civil Code (4th ed.), vol. 5, p. 79:

"(c) The additional compensation usually given by merchants to their workers and employees in the form of a share in the profits of their business enterprises or of any one of these, as stated in the first finding (*considerando*) of the judgment of February 16, 1899, does not constitute a gift, in the legal sense of the term, because it does not arise out of liberality but rather from an interested motive, which is to obtain, through the expectation of gain, more active and intelligent co-operation than that humanly to be expected for a fixed remuneration, unaccompanied by future, if uncertain, advantages."

Those are indeed the words of the Supreme Court of Spain in the cited judgment, in a suit between Josefa de Manzanedo and Santiago Ariestoy. In that case it was also alleged that the acceptance of the gift had not been shown; but the court decided that what the defendant called a gift was not such.

Similarly in the present case no gift is involved, as no act of pure liberality or generosity existed.

There is something peculiar and unusual in this case that we do not desire to pass unnoticed. It is stated in clause IV of the stipulation approved by the district court that the employees in question were notified of the resolution granting the bonus and that *"they accepted the notifications."* That phrase is repeated in the order of the court of July 9, 1927; and it also appears in appellant's brief. In the brief of the appellees it is worded differently, thus: *"that the plaintiffs accepted the bonus, and acted."*

It is not easy to find a logical meaning for the phrase "they accepted the notifications," since a notification is not something to be accepted or rejected. Any doubt in this connection should be resolved in the sense that the bonus was accepted. But in any event, as no gift is involved, the question of acceptance is immaterial.

It is contended that the court erred in holding that the resolution of February 29, 1924, could not be upheld and that the resolution of August 14, 1920, was in force. The latter is the resolution transcribed in clause II of the stipulation already quoted.

On September 15, 1921, at the annual meeting of stockholders there was adopted the resolution copied in paragraph III of the said stipulation. On April 29, 1924, the board of directors resolved to close the bonus account, in view of the attendant circumstances, and declared that the bonus was a gratuity which had been promised on condition that the proceeds from the sale of the 1920 sugar output justified it.

It is now contended that the directors had discretionary power to act in the matter and to cancel the bonus voted by the stockholders at a regular meeting.

It is to be noted from the record, that the said meeting of stockholders did not provide that the granting of the bonus should depend upon the price obtained for the sugar produced during the 1920 grinding season. This is claimed in the resolution of the board of directors, but we fail to find any confirmation thereof elsewhere.

It must be borne in mind that on September 15, 1921, the situation was as follows: A bonus had been voted but not paid. There being no funds then available for paying it, the stockholders at a regular meeting adopted a resolution in which they used the expression "is canceled", but stated that the bonus should be paid when, in the judgment of the board of directors, the financial conditions of the corporation were favorable. This action, far from canceling the bonus, confirmed it; it only postponed the time for its payment. The

board of directors, instead of complying with that action of the corporation, voted the cancellation of the bonus.

Numerous citations have been made which we do not think can be applied here as claimed by the appellant. Undoubtedly the power of a board of directors to conduct the business of the corporation is a broad one; but it does not include the authority to annul the will of the stockholders as expressed at a regular meeting.

Our corporation law provides:

"Sec. 11.—DIRECTORS AND OFFICERS.—The business of every corporation shall be managed by its directors, each of whom must be, at the time of his election, a bona fide stockholder thereof . . . ."

There is no doubt that great administrative powers are vested in the directors, and almost all the cases to which we have been cited refer to such powers. But no power is granted to them to destroy what has been done by the corporation itself through the vote of its stockholders at a regular meeting. Nor do we think that the board of directors, *stockholders* themselves, may nullify a resolution adopted at a regular meeting of stockholders, through which the corporation as a whole expressed itself.

As to the third assignment of error in which it is urged that the court erred in reconsidering its decision of July 9, 1927, and in rendering a different decision after the opposers had already appealed from the former decision, we find that the error is nonexistent.

The very broad provisions of section 140 of the Code of Civil Procedure authorize the courts to take such action. The purport and the spirit of that enactment should be considered more than its wording, on which the appellant relies.

In *Pérez* v. *District Court*, 39 P.R.R. 121, 124, we said:

"The reason of the district court for refusing to reconsider its judgment holding that the plaintiff 'had abandoned her action' was its belief that it had lost its jurisdiction by reason of the expiration of the term in which the judgment had been rendered.

"We do not agree. Although the motion of the plaintiff is called a motion to reconsider and although section 140 of the Code of Civil Procedure is not cited in it, there is no doubt that the deduction from it is that the power which the court was asked to exercise was the power conferred by that section. The district court itself stated in overruling the motion to reconsider that when its judgment for abandonment was rendered it had no knowledge of the existence of the plaintiff's motion that, as the demurrer had been decided against her, the court should render judgment so that she might appeal. A clearer case of inadvertence can not be found."

None of the errors assigned have been committed and, therefore, the order appealed from must be affirmed.